SO ORDERED: April 29, 2020.



Robyn L. Moberly
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ERIC S. & CATHERINE E. | ) | |
| RICHARDS | ) | CASE NO 18-3418-RLM-12 |
| | ) | |
| Debtors | ) | |
| | ) | |

**ORDER SUSTAINING, IN PART, DEBTORS' OBJECTION
TO 2nd AMENDED CLAIM FILED BY THE IRS**

Eric and Catherine Richards ("Debtors") objected to the amended Proof of Claim filed by the Internal Revenue Service ("IRS") in their chapter 12 bankruptcy. The IRS filed a response to that objection and a hearing was held in the court on February 18, 2020. For the reasons stated below, the Court sustains the Debtors' objection to the extent the actions taken by the IRS were contrary to the provisions

1

of the confirmed plan. However, the objection is overruled to the extent it requests additional relief.[1]

Among the far-reaching changes made to the Bankruptcy Code by BAPCPA [2] was the addition of §1222(a)(2)(A). That section dealt with the requirement a chapter 12 plan must provide for full payment of §507 priority claims, but carved out an exception for claims owed to a governmental unit that arose as a result of the sale, transfer, exchange, or other disposition of any farm asset used in the debtor's farming operation. If such a claim otherwise would have been entitled to §507 priority, the new §1222(a)(2)(A) provided, instead, that it would be treated as a general unsecured claim subject to discharge. This was a huge advantage to farmers who sought chapter 12 relief, as stated in *In re Ficken*, 430 B.R. 663, 666 (B.A.P. 10th Cir. 2010) *rev'd on other grounds*, 433 Fed. Appx. 682 (10th Cir 2011):

> The new provision attempts to mitigate the tax expense often incurred by farmers who have significant taxable capital gains or depreciation recapture when their low basis farm assets are foreclosed, sold, or otherwise disposed of by their creditors. Formerly, these dispositions created large priority tax claims that barred confirmation of Chapter 12 plans. By stripping these claims of their priority status and rendering them unsecured claims for distribution and discharge purposes, the drafters of BAPCPA sought to facilitate farmers' use of Chapter 12.

A split among the circuits arose as to whether §1222(a)(2)(A) covered taxes from the post-petition sale of farm assets during the pendency of the chapter 12 case. See, *Knudsen v. IRS*, 581 F.3d 696 (8th Cir. 2009) (holding that §1222(a)(2)(A) applied to post-petition sales); cf., *In re Dawes*, 652 F.3d 1236 (10th Cir. 2011) and *U.S. v. Hall*, 617 F.3d 1161 (9th Cir. 2010) (both holding that §1222(a)(2)(A) did not apply to post-petition sales). That question was answered in the negative. *Hall v. United States*, 566 U.S. 506, 132 S. Ct. 1882, 182 L.Ed.2d 840 (2012). *Hall* noted that, for §1222(a)(2)(A) to apply, the tax first had to be a tax that otherwise would be entitled to §507 priority. Of the several priority categories under §507, only two

---

[1] This order constitutes findings of fact and conclusions of law to the extent required by Fed. R. Bankr. P. 9014 and Fed. R. Bankr. P. 7052.

[2] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

addressed taxes. Section 507(a)(8) covered pre-petition taxes and didn't apply. Section 507(a)(2) covered administrative expenses allowed under §503(b). Section 503(b)(1)(B)(i) covered administrative taxes, but a prerequisite to that section was the tax had to be "incurred by the estate". Unlike chapter 7 and chapter 11 cases[3], Section 1399 of the Internal Revenue Code ("IRC") provided that no separate taxable estate is created upon a chapter 12 filing, and thus, chapter 12 administrative taxes are not "incurred by the estate". Consequently, taxes arising from disposition of farm assets during the pendency of the chapter 12 case did not enjoy §1222(a)(2)(A) treatment. *Id*, 566 U.S. at 512; 132 S.Ct. 1887. In October 2017, Congress enacted legislation that took out subsection (A) from §1222(a)(2) and added new §1232.[4] The "priority stripping" attributes of former §1222(a)(2)(A) were carried over to §1232 and extended to taxes arising from post-petition sales, thus effectively overruling *Hall*.

Debtors filed their chapter 12 case in May 2018 after the enactment of §1232. Their chapter 12 plan was confirmed in October 2018. The confirmed plan provided the IRS's priority claim for 2016 was $0 and its priority claim for 2017 was $5,681. While the tax liability for 2018 had not yet become due, the plan provided that there would be additional liquidation of farm assets in 2018 and occurring during the pendency of the case that would qualify for treatment under §1232.

The plan also provided the exclusive means by which "any and all claims" were to be paid post-petition, as follows:

> Section 11.03. <u>Exclusive Collection Action</u>. The means of payment described in this Plan are, absent an event of default of this Plan, the exclusive means of post-petition payment of any and all claims, and no creditor shall take action to collect on any claim, whether by offset or otherwise, unless specifically authorized by this Plan. Any action taken on or between the Petition Date and Confirmation Date shall be reversed and refunded to the appropriate entity if such action is not specifically authorized by this Plan. This paragraph does not curtail the exercise of a valid right of setoff permitted under §553.

---

[3] See I.R.C. §1398.
[4] Additional Supplemental Appropriations for Disaster Relief Requirements Act of 2017, PL. 115-72, effective October 26, 2017.

3

The IRS did not object to the plan and it was confirmed on October 22, 2018.

In March 2019, Debtors filed their 2019 federal tax return which included taxes attributable to the sale of farms assets during 2018. To single out those §1232 taxes from other taxes incurred during 2018, Debtors filed both a 2018 pro forma 1040 federal tax return[5] and a 1040 federal tax return. The pro forma return indicated that Debtors were entitled to a $6414 refund for 2018 (the "2018 Refund"). In October 2019, the IRS amended its claim (the "2nd Amended Claim") which indicated that it had offset the 2018 Refund against Debtors' 2018 unsecured §1232 taxes. At the hearing on the objection, counsel for the IRS indicated that the 2018 Refund had been applied to the 2016 priority taxes and the §1232-related general unsecured claim arising from the 2018 sale of farm assets. Debtors objected to the 2nd Amended Claim and their objection is in two parts: (1) asserting the setoff was prohibited by the express terms of the confirmed plan and (2) seeking an order from this Court directing the IRS to issue the 2018 Refund to Debtors.

## *Discussion*

### Sovereign Immunity

Debtors' objection to the 2nd Amended Claim recites that it is pursuant to §502(b). To the extent the issue before the Court is a claims objection wherein the Court has authority to determine and allow the amount of a claim under §502(b), this Court has jurisdiction to do so. Sovereign immunity is abrogated as to

---

[5] The pro forma return excluded the taxable income from the sale of farm assets qualifying for §1232 treatment in order to compute the taxes owed. This computation method is known as the "marginal" method that was approved by the 8th Circuit Court of Appeals in *Knudsen* and is applied by calculating a return for all income, then a second "pro forma" tax return removing all qualifying sales income, so that non-qualifying income would be taxed at lower marginal tax rates. The taxes shown on the "pro forma" return would represent the portion of the tax claim entitled to priority status, while the difference between the taxes shown on the return for all income and the taxes shown on the "pro forma" return would represent the unsecured portion of the tax claim. *Hall* overruled *Knudsen* only to the extent that then-§1222(a)(2)(A) did not apply to post-petition sales but *Hall* did not pass upon the appropriate method by which to compute taxes that included the sale of farm assets. Paragraph 3.05 of the debtors' confirmed plan here specifically provided that their tax liability would be computed using the marginal method used in *Knudsen*.

government units with respect to §502 matters under §106(a). Furthermore, Section 10.01(d) of the confirmed plan provides that the Court retains jurisdiction "to hear and determine any objections to claims filed both before and after confirmation".

Debtors' claim objection is premised on the IRS's violation of the terms of the confirmed plan that spell out how the tax claims are to be paid. Section 10.01(i) provides the Court retains jurisdiction to "hear and determine disputes arising from the Plan or its implementation." Furthermore, the IRS is bound by the terms of the confirmed plan under §1227(a). Section 106(a) abrogates sovereign immunity as to governmental units with respect to §1227, as well as §502.

### IRS's Right to Setoff under the Confirmed Plan

Section 553 preserves a creditor's right to setoff that exists under nonbankruptcy law. *In re Baucom*, 339 B.R. 504, 505 (Bankr. W.D. Mo. 2006). Section 553 requires that only mutual, pre-petition obligations can be set off against each other. *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995). 26 U.S.C. §6402 (a) (hereinafter "IRC") is the "nonbankruptcy law" that allows the IRS to set off tax overpayments against tax liabilities.

Courts are divided as to whether a confirmed plan under §1141, §1227 or §1327[6] bars the IRS from exercising its §553 setoff rights. Courts within the Seventh Circuit have held that, absent an express plan provision extinguishing such rights, a creditor's §553 rights survive confirmation. Section 553 provides that "this title does not affect any right of a creditor to offset a mutual debt" and courts have reasoned that the "effect of confirmation" provisions are contained in "this title" (Title 11) and thus, do not affect the creditor's §553 rights. *U.S. v. Munson*,

---

[6] These three sections are the "effect of confirmation" sections for chapter 11, 12 and 13 cases and essentially provide that, except as otherwise provided for in the plan, the property dealt with by the plan is free and clear of all claims and interests of creditors after confirmation of the plan. See, §1141(c), §1227(c) ("except as provided in section 1228(a) of this title and except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan"; §1327(c) (nearly identical language as §1227(c)).

5

248 B.R. 343, 346 (C.D. Ill. 2000 (§553 trumps §1327); *In re Bare*, 284 B.R. 870, 874-75 (Bankr. N. D. Ill. 2002) ("confirmation of a debtor's plan…does not extinguish prepetition setoff rights, especially …where the plan does not specifically treat those setoff rights"). However, a creditor's §553 setoff rights may be extinguished by express provision under a confirmed plan. *Daewoo Int'l (America) Corp. Creditor Trust v. SSTS Am. Corp.*, No. 02 Civ. 9629 (NRB), 2003 WL 21355214 at *4 (S.D.N.Y. 2003)("[i]ndeed, where there is a specific provision in the confirmation order prohibiting setoff claims, courts have indicated that the right to setoff may not survive the confirmation plan"); *IRS v. Driggs*, 185 B.R. 214, 215 (D Md. 1995); *In re Lykes Bros. Steamship Co.*, 217 B.R. 304, 310 (Bankr. M.D. Fla. 1997) (holding that §1141 takes precedence over §553 where plan of reorganization specifically prohibited setoff).

Debtors' plan specifically provided that "no creditor shall take action to collect on any claim, whether by offset or otherwise, unless specifically authorized by this Plan". That same paragraph later recites that "[t]his paragraph does not curtail the exercise of a valid right of setoff permitted under § 553". While this paragraph contains incongruities, they need not be resolved here because the type of setoff exercised by the IRS here was not of the kind "permitted under §553". The 2018 Refund was a post-petition payment owed to Debtors and was applied against the §1232 taxes arising from the 2018 sale of farm assets. Section 1232 taxes are to be treated as a dischargeable, pre-petition tax under §1232(a)(1). Therefore, the setoff was not among mutual, pre-petition obligations as required under §553. What is left is a paragraph that clearly prohibits set off as a means for "post-petition payment of any and all claims". The setoff exercised by the IRS was in derogation of section 11.03 of the plan.

### Court's Authority to Order IRS to Issue 2018 Refund

The solutions proposed by the Debtors to rectify the prohibited setoff is to (1) order the IRS to issue the 2018 Refund to Debtors or (2) withhold distributions to the IRS under the plan or pay those distributions to Debtors until the 2018 Refund

6

is issued. To the extent Debtors seek to alter payments to the IRS under the plan by withholding distributions or having them paid to the debtors instead, Debtors are free to move to modify their plan under §1229(a)(4). Otherwise, Debtors' remedies require this Court to order the IRS to issue the 2018 Refund. That remedy gives the Court pause, especially when the vehicle by which the remedy is sought is a claims objection under §502(b).

Section 502(b) provides that a court may "determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition and shall allow such claim in such amount" but nowhere does that section provide for anything beyond "determining" and "allowing". Section 542(b) provides for turnover by an entity that owes a debt, subject to the entity's §553 setoff rights, but the debt has to be "property of the estate". *In re Sissine*, 432 B.R. 870, 887 (Bank. N.D. Ga. 2010) ("the affirmative duty to turnover (sic) property is limited to property of the estate."). A governmental unit that has filed a proof of claim in a case is deemed to have waived sovereign immunity with respect to a claim against it that is property of the estate and that arose out of the same transaction or occurrence as the claim out of which the claim of such governmental unit arose under §106(b). Thus, the 2018 Refund, at a minimum, must be "property of the estate" if this Court is to have jurisdiction and the authority to direct its turnover.

### Property of the Estate

Section 541(a) includes an expansive definition of "property of the estate" and provides that the commencement of a case creates an estate. Section 541 falls under "Chapter 5" (entitled "Creditors, the Debtor and the Estate") and applies to chapter 12 cases under §103(a). Section 1207 extends "property of the estate" to include property that is of the kind described in §541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed or converted to a case under chapter 7. Yet, §1227(b) provides that confirmation vests all

7

property of the estate in the debtor and Section 11.09 of the confirmed plan here provides likewise.[7]

Chapter 13 contains nearly identical provisions in §1306 and §1327(b). Courts that have attempted to reconcile these seemingly irreconcilable sections have developed four distinct lines of cases which were summarized in *In re Holden*, 236 B.R. 156, 161 (Bankr. D. Vt. 1999). Suffice to say that the Seventh Circuit follows the line of cases that hold that the only property that remains "property of the estate" post confirmation is that property needed to fund the confirmed plan. *In re Heath*, 115 F.3d 521, 524 (7th Cir. 1997) ("We read the two sections, 1306(a)(2) and 1327(b), to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan."). Nothing in the plan or confirmation order here provides that post-petition tax refunds remain "property of the estate" and the debtor has made no assertion that the 2018 Refund is needed to fund the plan. Nor has the chapter 12 trustee sought turnover of the 2018 Refund to augment the plan. Even assuming that the 2018 Refund qualifies as "property of the estate" under §1207, it no longer is, as it vested in Debtors upon confirmation.

The IRS contends that the 2018 pro forma tax return does not accurately reflect Debtors' tax liability because the pro forma return "is used solely for the IRS Insolvency Unit to submit an accurate proof of claim to the Court. It does not entitle Debtors to a refund." IRS Response, Doc. #33, pg. 7-8. Section §505(a)(2)(B) (for which §106(b) abrogates sovereign immunity for governmental units) gives the Court the power to determine *the right of the estate* to a tax refund. Section 505(a)(2)(B) provides that the bankruptcy court may not determine—

> (B) any right of the estate to a tax refund, before the earlier of—
> (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or
> (ii) a determination by such governmental unit of such request

---

[7] Section 11.09 of the plan provides in part, that "[u]pon entry of the Confirmation Order, all property of the Estate and that property treated under the Plan shall vest or re-vest in the Debtors".

8

The intended purpose of subsection §505(a)(2)(B) is to prevent a refund claim from languishing in the administrative processes, thus permitting the bankruptcy court to make a determination of a refund if the taxing authority does not act upon a refund claim within 120 days. *In re Luongo*, 259 F.3d. 323, 328, n4 (5th Cir. 2001). *Luongo* rejected the notion that the §505(a)(2)(B) grant of jurisdiction is limited to refunds that benefit the estate. *Id*. But see, *In re Patriot Coal Corp.*, 562 B.R. 632, 646 (Bankr. E.D. Va. 2016) ("the Trustee's allegations and supporting exhibits may very well support an argument that he is entitled to the refunds claimed, but they do not establish undisputed ownership as required for a §542 turnover proceeding."); *In re Copley*, 572 B.R. 808, 811(Bankr. E.D. Va. 2017) (holding that §505(a)(2)(B) did not apply because chapter 7 debtors were not "trustees" and were not seeking the refund for the benefit of the bankruptcy estate).   Fortunately, the Court need not address this issue.  Even if the 2018 Refund fell within the limits of §505(a)(2)(B), nothing in the record indicates that Debtors followed the appropriate administrative procedures in requesting a refund from the IRS.  See, IRC §7422.  The Court lacks jurisdiction to make any determination with respect to the amount or the turnover of the 2018 Refund. *In re DeBellis*, Case No. CV 19-2849 FMO, 2020 WL 1317725 at *1 (C.D. Cal. March 20, 2020) (reversing judgment of bankruptcy court and dismissing adversary proceeding, noting that "even assuming the debtors/appellees have standing to pursue the tax refund, the court is persuaded that the bankruptcy court did not have jurisdiction because the debtors/appellees never filed an administrative claim for a refund as required by §505(a)(2)(B)"); *In re LaPaloma Generating Co., LLC*, 607 B.R. 794, 804 (D. Del. 2019) (where bankruptcy court dismissed tax dispute regarding refund for failure to follow §505, district court noted that appellant's entitlement to refund of state property taxes must be adjudicated in state court); *In re Szanto*, 574 B.R. 862, 875 (Bankr. D. Or. 2017) (refund claim dismissed for failure to follow §505(a)(2)(B) requirements).

      Accordingly, Debtors' objection to the 2nd Amended Claim is SUSTAINED to the extent the 2018 Refund was applied to the IRS's claim in a manner other than

9

provided for under the confirmed plan. IT is OVERRULED as to all other relief requested.

# # #